## Robbins v. Robbins

C.P. of Lehigh County, DR-96-988, account no. 715249-005.

*Gwin M. Krouse,* for plaintiff.
*Thomas C. Anewalt,* for defendant.

PLATT, *J.,* March 18, 1997—Plaintiff, Brenda Robbins, has filed an appeal from the determination of the Lehigh County Domestic Relations Office awarding her child support from the defendant, Steven E. Robbins, in the amount of $144 per month ($33 per week); the support is for the parties' minor child of whom they

share physical custody on an equal (50-50) basis. In addition, defendant was required to pay 50 percent of the day care expense for the minor child. No testimony was taken at the de novo hearing before this court. The parties, in effect, submitted the matter as a pure question of law, based upon the equal shared custody arrangement and the earnings records established at the Domestic Relations Office hearing.

Thus, the only facts before this court are: (1) that the parties share physical custody of their 8-year-old child on an equal basis; (2) that defendant's net income was set at $2,915 per month; and (3) that plaintiff 's net income was set at $905. The Domestic Relations Office calculated the amount of support which Defendant owed Plaintiff by using the Pennsylvania Support Guidelines. First, they calculated that under the guidelines, defendant's child support obligation to plaintiff for a full-year custody order would be $421 per month ($97 per week). Next, that plaintiff's guideline child support obligation to defendant for a full-year custody order would be $133 per month ($31 per week). Next they offset, or subtracted, the lower order against, or from, the higher order, and obtained a net figure of $288 per month ($66 per week). Finally, because the parties share custody on an equal basis, *i.e.,* each has the child for 50 percent of the year, they divided the net amount by two and entered an order of support against defendant and in favor of plaintiff in the amount of $144 per month ($33 per week).

Plaintiff argues that this method of calculating support in joint custody cases is inappropriate. She bases her argument on a Berks County decision, *Payne v. Payne,* 87 Berks L.J. 103 (1995), another case involving equal shared physical custody, where, instead of reducing the support by one-half, the court simply subtracted the

lower, full-year guideline figure from the higher, full-year guideline amount. On the basis of *Payne,* plaintiff suggests a support order to mother of $288 per month ($66 per week).

Defendant asserts that the Lehigh County method for calculating joint custody support is correct and should continue to be applied in this case and future cases. He further argues that plaintiff is collaterally attacking all existing cases in Lehigh County where equal shared custody orders were similarly calculated.

The Pennsylvania Support Guidelines are based upon the Income Shares Model developed by the Child Support Guidelines Project of the National Center for State Courts. As noted in the *explanatory comment* following Pa. R.C.P. 1910.16-1 (Amount of support. Support Guidelines), "[t]he model is based on the idea that the child of separated or divorced parents should receive the same proportion of parental income that she or he would have received if the parents lived together."

The guidelines set forth at Pa. R.C.P. 1910.16-5(h), an offset procedure to be followed where custody of two or more children is divided or split between the parents. Similarly, Pa. R.C.P. 1910.16-5(j) provides for an offset of child support against spousal support or alimony pendente lite where the custodial parent owes spousal support or alimony pendente lite to the non-custodial parent. The rules, however, do not address the situation where physical custody of a child or children is shared equally. Both the Berks County Court in *Payne,* and the Lehigh County Domestic Relations Officer in the case at bar, however, used the offset method in their respective calculations. The sole difference being that in *Payne* the calculations were limited to that offset, and in this case, there was a further calculation reducing the guideline amount by 50 percent.

In *Payne, supra* at 104, the court rejected the Hearing Officer's recommendation that the offset amount be reduced by the 50 percent time period when the children were in the obligor's physical custody, stating:

"[T]o not only take the difference between the support obligations but also to cut the difference in half seems to be a 'double deviation.' The subtraction of plaintiff's obligation from the defendant's is deviation enough."

The first problem with that analysis is that neither calculation, in my view, represents a "deviation" from the guidelines. Pa. R.C.P. 1910.16-4 (Support Guidelines Deviation) provides:

"(a) If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

"(b) In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider

"(1) unusual needs and unusual fixed obligations;

"(2) other support obligations of the parties;

"(3) other income in the household;

"(4) ages of the children;

"(5) assets of the parties;

"(6) medical expenses not covered by insurance;

"(7) standard of living of the parties and their children; and

"(8) other relevant and appropriate factors, including the best interests of the child or children."

Certainly in the case before this court, and apparently in *Payne* as well, there was no evidence presented that either parent bore a disproportionate share of the chil-

dren's expenses for food, clothing, shelter, activities or transportation. But see, *Seawalt v. Muldoon,* 406 Pa. Super. 94, 593 A.2d 886 (1991) (acknowledging that one of the parties bore more of the expenses involved in raising the children); see also, such pre-state guideline cases as *Funk v. Funk,* 376 Pa. Super. 76, 545 A.2d 326 (1988); *Bower v. Hoover,* 370 Pa. Super. 321, 536 A.2d 426 (1988); and *Fee v. Fee,* 344 Pa. Super. 276, 496 A.2d 793 (1985).

The offsetting of the order owed by one party to the other is clearly not a deviation from the guidelines; it is merely a matter of eliminating cross payments of the support obligations which each party owes to the other. The reduction by one-half is likewise not a true deviation[1], but rather, a calculation which merely takes into account the fact that each party has custody of the child or children 50 percent of the time[2]. To reiterate, this is not a "double deviation," nor for that matter any deviation at all from the guidelines, it is simply a calculation of the monthly support owed by

---

1. Some of the confusion regarding terminology stems from the language of Pa.R.C.P. 1910.16-5(m), "a noncustodial parent's support obligation should be reduced only if that parent spends an unusual amount of time with the children." In *Anzalone v. Anzalone,* 449 Pa. Super. 201, 673 A.2d 377 (1996) (40 percent and 60 percent custody sharing); *Connor v. Connor,* 434 Pa. Super. 288, 642 A.2d 1136 (1994) (27 percent and 73 percent custody sharing); and *Dalton v. Dalton,* 409 Pa. Super. 258, 597 A.2d 1192 (1991) (plurality opinion) (42.8 percent and 57.2 percent), the court declined to *reduce* the guideline figure. It is submitted that this sentence from the rule has no real applicability in a true 50 percent shared custody case, which as later noted herein involves a guideline order recognizing the first sentence of this rule.

2. In *Depp v. Holland,* 431 Pa. Super. 209, 636 A.2d 204 (1994), the court found no abuse of discretion in similar calculations where the parties shared custody on a 52.68 percent and 47.32 percent basis.

one party to the other under the guidelines, by multiplying the monthly guideline support figures by six months and then offsetting one against the other to determine the net annual difference in order to determine the monthly or weekly amount owed by one parent to the other under an equally shared physical custody arrangement.

The Berks County Court, in addition to perceiving these calculations as deviations from the guidelines, ignored the fact that the guidelines take into consideration the "direct expenditures on behalf of the children," made by the noncustodial parent. Pa.R.C.P. 1910.16-5(m). In shared physical custody cases such as these, those expenses are built into the figures for each parent who one-half the time is a noncustodial parent.[3]

For all of these reasons, I was not persuaded by the *Payne* decision. My opinion, which will result in the continuation of the current procedures in Lehigh County, was reinforced by the fact that similar procedures are followed in Northampton County[4] and recommended in the literature. See, *e.g.,* Mellie and Brown, *The Economics of Shared Custody: Developing an Equitable Formula for Dual Residence,* 31 Hous. L. Rev. 543, 559-60 (1994). ("[M]ost child support policymakers recommend that a child support award [in cases

---

3. Obviously, shared custody arrangements may increase, to some extent, each parent's child-related expenses because of the direct costs he or she absorbs. It seems to the undersigned, however, that using the guidelines, and with no evidence of any particular increased expenditures, these expense fall more heavily upon the parent with the higher income, and that is appropriate and consistent with a guideline order.

4. Lehigh County is bounded on the west by Berks County, and on the east by Northampton County.

of equal time sharing] be calculated for each parent based on that parent's income and 50 percent time with the child. The parent with the higher income then pays the difference between the higher and lower support awards.")

Under all of the facts and law, the guideline order and the calculations made by the Domestic Relations Office, in my opinion, produced a support order in this case which was just and appropriate, and which should be affirmed.

## ORDER

And now, March 18, 1997, after a hearing de novo, and for the reasons set forth in the accompanying opinion, the order recommended by the Domestic Relations Hearing Officer is hereby affirmed.